UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARCO MOROCHO FAREZ, *et al.*,

Plaintiffs,

v.

JGR SERVICES, INC., *et al.*,

Defendants.

No. 21-CV-8205 (KMK)

OPINION & ORDER

Appearances:

James Patrick Peter O'Donnell, Esq.
Kew Gardens, NY
*Counsel for Plaintiffs*

Roman Mikhail Avshalumov, Esq.
Avraham Y. Scher, Esq.
Helen F. Dalton & Associates, P.C.
Kew Gardens, NY
*Counsel for Plaintiffs*

Hector M. Roman, Jr., Esq.
Law Office of Hector M. Roman, P.C.
Richmond Hill, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Plaintiffs Marco Morocho Farez ("Marco"), Jorge Morocho Farez ("Jorge"), Moises

Nugra Morocho ("Moises"), Abraham Nugra Morocho ("Abraham"), and Diego Farez ("Diego";

together, "Plaintiffs"), individually and on behalf of all others similarly situated, brought this

Class Action against JGR Services, Inc. ("JGR"), Cuetes Corp. ("Cuetes"), and Juan Martinez

("Martinez"; together, "Defendants"), pursuant to the Fair Labor Standards Act of 1938

("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), § 190 *et seq.*  (*See*

*generally* Compl. (Dkt. No. 1).)  The Parties now seek approval of their proposed settlement (the

"Settlement Agreement").  (*See* Mot. for Settlement Approval (the "Motion") (Dkt. No. 26).)

For the reasons that follow, the Parties' request for approval of the Settlement Agreement

is granted.

## I.  Background

### A.  Factual Background

Plaintiffs are former carpenters, scaffolders, and laborers at JGR and Cuetes.  (*See*

Compl. ¶¶ 8–12; Motion at 2.)   Marco worked for Defendants from around August 2019 until

around June 2021.  (*See* Compl. ¶ 8.)  Jorge worked for Defendants from around August 2019

until around January 2020.  (*See id.* ¶ 9.)  Moises worked for Defendants from around August

2019 until around July 2021.  (*See id.* ¶ 10.)  Abraham worked for Defendants from around

August 2019 until around July 2021.  (*See id.* ¶ 11.)  Diego worked for Defendants from around

October 2019 until around June 2021.  (*See id.* ¶ 12.)

Plaintiffs allege that they were regularly required to work approximately six days per

week and approximately twelve hours per day for a total of approximately seventy-two hours per

week.  (Motion at 2; *see also* Compl. ¶¶ 37–61.)  Plaintiffs further contend that they were paid

the same hourly rate for all hours worked, including those in excess of forty hours per week.

(Motion at 2; *see also* Compl. ¶¶ 37–61.)  Plaintiffs assert that they were paid between $24.00

per hour to $35.00 per hour depending on the Plaintiff and the time period, but that they received

these regular hourly rates for all hours worked and did not receive time-and-a-half for their

overtime hours.  (Motion at 2; *see also* Compl. ¶¶ 37–61.)  In their Complaint, Plaintiffs

requested that the Court declare Defendants' conduct in violation of the Plaintiffs' rights under

2

the FLSA, the New York Labor Law, and its regulations; award Plaintiffs unpaid overtime

wages, liquidated damages pursuant to 29 U.S.C. §216 and New York Labor Law §§198(1-a),

663(1), prejudgment and post-judgment interest, the costs of this action together with reasonable

attorneys' fees; and award any further relief that the Court deemed necessary and proper.

(Compl. at 14.)

     B.  Procedural Background

Plaintiffs filed this Action on October 5, 2021. (*See generally* Compl.)  On January 20,

2022, after the Parties stipulated to extend the time to answer the Complaint, Defendants filed

their Answer.  (*See* Dkt. No. 10.)  The Parties submitted a proposed case management plan on

March 7, 2022.  (*See* Dkt. No. 14.)  The Court held a conference on March 8, 2022, during which

it adopted the case management plan and referred the Parties to Mediation.  (*See* Dkt. (minute

entry for March 8, 2022); Dkt. Nos. 15–16.)

On September 1, 2022, the Parties attended their first mediation conference.  (*See* Dkt.

(minute entry for Sept. 1, 2022).)  On September 12, 2022, the Parties submitted a Joint Letter

Motion to adjourn a conference, requesting to reschedule the conference to sometime after the

Parties' second mediation conference, which the Court granted.  (*See* Joint Letter Mot. from

James O'Donnell to Court (Sept. 12, 2022) (Dkt. No. 18); Order Granting Adjournment (Dkt.

No. 19).)  Thereafter, the Parties filed a Joint Letter requesting an extension of time regarding the

Court conference due to ongoing mediation between the Parties, which the Court granted.  (*See*

Letter Mot. from Hector M. Roman to Court (Oct. 24, 2022) (Dkt. No. 21); Order Granting

Extension (Dkt. No. 22).)  The Parties attended their second mediation conference on December

1, 2022. (*See* Dkt. (minute entry for Dec. 1, 2022).)  The Court held a status conference on

3

December 7, 2022.  (*See* Dkt. (minute entry for Dec. 7, 2022).)  The mediator filed a final report

on January 25, 2023, noting that agreement was reached on all issues.  (*See* Final Report of

Mediation #1 (Dkt. No. 25).)  The Court held a status conference on January 25, 2023.  (*See* Dkt.

(minute entry for Jan. 25, 2023).)  On March 16, 2023, the Parties submitted their Motion,

seeking approval of their Settlement Agreement.  (*See generally* Motion.)  Pursuant to the

Court's request, on December 18, 2023, Plaintiffs' counsel submitted contemporaneous billing

records related to counsel attorneys' fees request.  (*See* Letter from James O' Connell ("Billing

Records") (Dkt. No. 27).)

## II.  Discussion

### A.  Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an

action without a court order is made "[s]ubject to . . . any applicable federal statute[.]"  "Except

as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court

order, on terms that the court considers proper."  *See* Fed. R. Civ. P. 41(a)(2).  "The Second

Circuit has confirmed that the FLSA is an 'applicable federal statute,' such that 'Rule

41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of

the district court or the [Department of Labor] to take effect.'"  *Martin v. F & M Scarsdale Pizza

Corp*, No. 22-CV-6346, 2023 WL 6160567, at *1 (S.D.N.Y. Sept. 20, 2023) (alteration in

original) (quoting *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 206 (2d Cir. 2015)).

"Consequently, 'the Parties must satisfy the Court that their agreement is fair and reasonable.'"

*Krasnansky v. JCCA*, No. 22-CV-6577, 2023 WL 6141240, at *2 (S.D.N.Y. Sept. 20, 2023)

(alteration adopted) (quoting *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL

4

7736551, at *1 (S.D.N.Y. Nov. 30, 2015)); *see also Briggs v. DPV Transp., Inc.*, No. 21-CV-6738, 2021 WL 6111917, at *2 (S.D.N.Y. Dec. 27, 2021) (same); *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair," as the Court is ordinarily "not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Chuchuca v. FitzCon Constr. G.C., Inc.*, No. 20-CV-2178, 2023 WL 6541776, at *1 (S.D.N.Y. Sept. 15, 2023) (quoting *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015)); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Pascual v. Three Diamond Diner Corp.*, No. 21-CV-3333, 2023 WL 1518513, at *2 (S.D.N.Y. Feb. 3, 2023) (quoting *Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016)); *see also Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same); *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (same). Conversely, factors which weigh against finding a settlement fair and reasonable include:

5

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Khan v. Yonkers Auto Ctr., Inc.*, No. 19-CV-5581, 2022 WL 2866459, at *2 (S.D.N.Y. July 21, 2022) (quoting *Wolinsky*, 900 F. Supp. 2d at 336); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Jambox*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

"Making this determination 'is thus an information intensive undertaking,'" *Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782, 2022 WL 2129053, at *3 (S.D.N.Y. June 14, 2022) (quoting *Camacho*, 2014 WL 6985633, at *2), and "the Parties must provide the Court with enough information to evaluate the bona fides of the dispute," *Salami v. B S D Food LLC*, No. 21-CV-02704, 2022 WL 671980, at *3 (S.D.N.Y. Mar. 7, 2022) (alterations adopted) (quoting *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015)).[1] To that end, courts require information regarding

> the nature of the plaintiffs' claims, the litigation and negotiation process, the employers' potential exposure . . . to the plaintiffs, the bases of estimates of the plaintiffs' maximum possible recovery, the probability of the plaintiffs' success on the merits, and evidence supporting any requested fee award.

---

[1] "This approach is consistent with the requirement that 'FLSA settlements not be confidential,' in part because 'sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair.'" *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 316 n.4 (S.D.N.Y. 2021) (alterations adopted) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015)).

*Khan*, 2022 WL 2866459, at *2 (alterations adopted) (quoting *Gaspar*, 2015 WL 7871036, at *1); *see also Nights of Cabiria*, 96 F. Supp. 3d at 176 (same).

    B.  Analysis

        1.  Whether Settlement Amount is Fair and Reasonable

The Court finds that the settlement sum is fair and reasonable.  Under the Settlement Agreement, Defendants agreed to pay $55,000 (the "Settlement Amount") to resolve Plaintiffs' claims.  (Motion at 3; Settlement Agreement at 1.)  Of the Settlement Amount, $18,023 will go towards attorneys' fees and $929 will go towards attorneys' expenses.  (Motion at 5.)  Thus, Plaintiffs' net settlement—after the deduction of attorney fees and costs—is $36,048.[2]

Plaintiffs estimate, "[b]ased on [their] initial allegations," that they could establish unpaid overtime wages in the range of $100,000.  (*Id.* at 2.)  However, if they chose to move forward instead of settling, Plaintiffs suggest that they may face some litigation risks.  For example, "despite Plaintiffs' disputes as to their completeness and accuracy," Plaintiffs note that Defendants have produced employment records that contradict Plaintiffs' wage and hour and overtime allegations.  (*Id.*)  Additionally, Plaintiffs point out that although they are "confiden[t] that they could prevail on all of their claims and be awarded a potential six-figure judgment, Plaintiffs ha[ve] serious concerns about the financial viability of Defendants and whether they would ever recover on such a judgment."  (*Id.*)  Therefore, the Parties contend that the

---

[2] Courts evaluate the fairness of a plaintiff's recovery after deducting attorney fees and costs.  *See Pascual*, 2023 WL 1518513, at *3 n.3; *see also Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2020 WL 5898956, at *3 (S.D.N.Y. Oct. 5, 2020) (same); *Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) (same); *Garcia v. Cloister Apt Corp.*, No. 16-CV-5542, 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019) (same).

Settlement Amount, "account[s] for both the factual disputes as to the hours worked by Plaintiffs, the dates worked by Plaintiffs and the pay received by Plaintiffs as well as the economic realities of Defendants' financial situation." (*Id.* at 3.)

A net recovery of $36,048 would represent about 36% of Plaintiffs' total alleged damages. The Court finds that, given the risks identified by the Plaintiffs, the settlement amount is reasonable. *See Krasnansky*, 2023 WL 6141240, at *3 (holding that a net recovery of 31% of Plaintiff's total alleged damages is fair); *Pascual*, 2023 WL 1518513, at *3 (S.D.N.Y. Feb. 3, 2023) (approving settlement representing 29% of the plaintiffs' total damages); *Redwood v. Cassway Contracting Corp.*, No. 16-CV-3502, 2017 WL 4764486, at *2 (S.D.N.Y. Oct. 18, 2017) (holding that net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Rodriguez-Hernandez v. K Bread & Co.*, No. 15-CV-6848, 2017 WL 2266874, at *4–5 (S.D.N.Y. May 23, 2017) (approving settlement sum representing 26% of potential damages as reasonable).

### 2. Good Faith

The Court is satisfied that the Settlement Agreement was negotiated competently, in good faith, at arm's length, and that there was no fraud or collusion. (*See* Motion at 5 (noting that "[t]he settlement was the product of good faith negotiations between experienced and competent counsel through the Court-annexed mediation program").) Specifically, because Defendants provided Plaintiffs with some discovery documents, including Plaintiffs' time records, and Defendants' tax returns, bank statements, documents regarding loans, judgments, and bills, (*see* Motion at 2–3), and the Parties attended multiple mediation sessions, (*see* Dkt. (minute entry for Sept. 1, 2022); (minute entry for Dec. 1, 2022)), the Court has no reason to doubt that the Parties,

in reaching the Settlement Agreement, acted in good faith.  *Luna v. J.S. Held LLC*, No. 21-CV-3072, 2023 WL 2214012, at *3, 7 (E.D.N.Y. Feb. 24, 2023) (holding that a settlement agreement reached after discovery, a full day of mediation with a court-appointed mediator, and two days of negotiations was agreed upon in good-faith); *see also Perez*, 2022 WL 2129053, at *4 (concluding that the parties arrived at the settlement agreement in good faith, where the agreement "was reached as a result of extensive arm's length negotiations between counsel who were well versed in the prosecution and defense of wage and hour actions, and with the assistance of a mediator" (internal quotation marks and record citation omitted)); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10-CV-4825, 2013 WL 1364147, at *3 (S.D.N.Y. Apr. 2, 2013) ("To help resolve the case, the parties enlisted the services of two experienced employment mediators . . . .  Two separate full-day mediations were held.  Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved meets the requirements of due process." (collecting cases)).

### 3. Similarly Situated Plaintiffs

The Court is not aware of other employees who are similarly situated to Plaintiffs, and Plaintiffs will be the only employees affected by the settlement and dismissal of the lawsuit. These facts weigh in favor of approval of the Settlement Agreement.  *Krasnansky*, 2023 WL 6141240, at *4; *see also Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816, 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (noting that no other employee came forward and that the plaintiff would "be the only employee affected by the settlement and dismissal," and that these facts supported approval of the proposed settlement); *Penafiel*, 2015 WL 7736551, at *2

(noting that the fact that "[n]o other employee ha[d] come forward" supported settlement approval).

                     4. Release Provision

       "'The FLSA is a uniquely protective statute,' and courts will not approve settlement agreements that contain overly broad release provisions that would 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Khan*, 2022 WL 2866459, at *4 (alteration adopted) (quoting *Cheeks*, 796 F.3d at 206–07); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—including unknown claims and claims that ha[d] no relationship whatsoever to wage-and-hour issues"). "To that end, releases must generally be limited to wage and hour issues," *Diaz v. Rockland Gardens Associates*, No. 22-CV-3281, 2023 WL 1517888, at *4 (S.D.N.Y. Feb. 3, 2023) (citing *Cheeks*, 796 F.3d at 206),

and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct," *id.* (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181).

Here, the Settlement Agreement release provides in relevant part that:

> Plaintiffs . . . [release and forever discharge] . . . Defendants . . . of and from all . . . causes and causes of action, claims and demands . . . , which were alleged in the Complaint filed in the action, specifically including [claims related to] Fair Labor Standards Act and New York Labor Law, and its associated regulations concerning unpaid wages, liquidated damages, record-keeping violations and failure to provide proper wage statements and wage notices, which Plaintiffs ever had or now have against all Defendants.

(Motion Ex. 1 ¶ 6.)

"While broad, the terms of the release relate specifically to wage and hour issues without encompassing, for example, prospective discrimination [or other irrelevant] claims." *Perez*, 2022 WL 2129053, at *5 (alterations adopted) (quoting *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017)); *cf. Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (rejecting proposed settlement releasing "any and all FLSA claims and NYLL claims of any kind or nature"). Therefore, the Court approves the release.

### 5. Attorneys' Fees

Finally, the Court determines that the attorneys' fees and costs requested by Plaintiff's counsel are reasonable. Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorney fees. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, *inter alia*, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)); *see also Salami*, 2022 WL 671980, at *6 (same). "Although courts may elect to

11

award fees by considering either the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—or the percentage method—a percentage of the total amount recovered by the plaintiffs—'the trend in the Second Circuit is toward the percentage method.'" *Krasnansky*, 2023 WL 6141240, at *5 (alterations adopted) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)).  But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Olibares v. MK Cuisine Glob. LLC*, No. 21-CV-10694, 2023 WL 5702595, at *4 (S.D.N.Y. Sept. 5, 2023) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records." (internal quotation marks and citation omitted)).  A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *De La Luz Aguilar v. Tacos Grand Cent., Inc.*, No. 21-CV-1963, 2023 WL 7624642, at *2 (S.D.N.Y. Nov. 14, 2023) (quoting *Wolinsky*, 900 F. Supp. 2d at 336).  The Court must also determine the reasonableness of the hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Chen v. Dim Sum Palace Inc.*, No. 23-CV-1707, 2023 WL 7280669, at *2 (S.D.N.Y. Nov. 3, 2023) (quoting *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012)).

Here, the Settlement Agreement reflects that Plaintiffs' counsel seeks $929 in costs and a fee award of award of $18,023, (Motion at 4–5), which is approximately 33% of the net Settlement Amount net of costs.[3]  The billing records that Plaintiffs' counsel submitted

---

[3] "Courts in this District often evaluate fee requests against the net settlement amount reduced by costs claimed by Plaintiff's counsel." *Diaz*, 2023 WL 1517888, at *5 (S.D.N.Y. Feb. 3, 2023); *see also Intal v. Erie Agustin, M.D. Primary Care, P.C.*, No. 18-CV-3196, 2022 WL

demonstrate billable hours and expenses counsel and staff undertook as part of this settlement,

totaling $23,452.50.  (*See* Billing Records Ex. 1 at 2.)  After a review of the records, the Court

finds that these records meet the above-mentioned standard requiring counsel to submit a factual

basis for the award requested.  *See Wolinsky*, 900 F. Supp. 2d at 336.

      Based on the billing records, counsel expended a decent amount of time and resources—

namely one attorney did a little over thirty-three hours of work, and another attorney did almost

twenty-eight hours of work. (*See* Billing Records Ex. 1 at 1–2.)  "To that point, the attorneys'

fees requested are [] less than the amount billed by Plaintiff's [c]ounsel for this case, especially

given that the Court finds counsel[s'] rates fair when considering the prevailing market rate for

lawyers in the district in which the ruling court sits." *Krasnansky*, 2023 WL 6141240, at *5

(alterations adopted) (internal quotation marks and citation omitted); *see also Salami*, 2022 WL

671980, at *7 (same); *Shah v. 786 MS Corp.*, No. 20-CV-4406, 2021 WL 2789277, at *2

(S.D.N.Y. Apr. 23, 2021) (same).

      In addition, courts in the Second Circuit routinely award attorney fees in FLSA

settlements of as much as one-third of the total recovery.  *See, e.g.*, *Diaz*, 2023 WL 1517888, at

*5 (holding that attorneys' fees in the amount of 33.3% of the net settlement was appropriate);

*Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June

29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA

cases."); *Ocasio v. Big Apple Sanitation, Inc.*, No. 13-CV-4758, 2016 WL 5376241, at *2

(E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee

---

892084, at *4 (E.D.N.Y. Jan. 27, 2022) (assessing attorneys' fees against the net settlement
amount after deducting attorneys' costs), *report and recommendation adopted*, No. 18-CV-3196,
2022 WL 889041 (E.D.N.Y. Mar. 25, 2022).

percentage of 33 1/3%"), *report and recommendation adopted* 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016).

Accordingly, the Court finds counsels' requested fees to be a reasonable award.

### III. Conclusion

For the foregoing reasons, the Parties' request for approval of their Settlement Agreement is granted.  The Clerk of the Court is respectfully directed to terminate the pending motion (Dkt. No. 26) and close this case.

SO ORDERED.

Dated:   December 21, 2023
         White Plains, New York

_____
        KENNETH M. KARAS
      United States District Judge

14